JANUARY TERM, 1882, No. 298.                MAY 18TH, 1882.

## Appeal of Henry Charles *et al.*

1. A family settlement made by the widow and children of Henry Charles deceased, provided, *inter alia,* that " the separate estate of widow Anna Charles received from her father Michael Kreider's estate, and which came to the hands of her husband in the year 1852, . . . is to be drawn out by her, from estate of Henry Charles and retained by her sons Henry and Michael Charles, who are to pay to her the annual interest, and in case of sickness or other need apply so much of the principal for her use as they deem right and just, and at her death the remainder of said fund to be paid to her heirs." The widow died, having made a will in which she bequeathed the fund to two of her children absolutely. Two others of her children cited Henry and Michael Charles, as trustees, to account. *Held,* that the fund was her own absolute, personal estate, and vested in the legatees under the will, there being nothing from which it appeared that such disposition of it would in any way disturb the settlement.

2. The word " heirs " in the agreement should not be construed to mean " children."

3. Since she received nothing by the settlement that was not already her own or that she was not by law authorized to take, there was no consideration on which to support the presumption of a gift to the children, and her authorization of two of her sons to take charge of the fund as trustees to her own use, during her life, neither altered her right to or power over it.

Before SHARSWOOD, C. J.; and MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT, and GREEN, JJ.

Appeal of Henry Charles and Michael Charles from the decree of the Court of Common Pleas of *Lancaster County* requiring them to account, upon the petition of Benjamin Huber and Susan Huber and John M. Warfel and Anna Warfel for a citation.

Henry Charles died in 1873, leaving a widow Anna Charles, a son Benjamin by his first wife, and the following children by his widow, Henry, Elizabeth, wife of Valentine Warfel, Michael, Jacob, Susan, wife of Benjamin Huber, Anna, wife of John M. Warfel, Barbara, wife of Martin Mylin, Fanny, and Catherine, wife of Joseph Miller. In his will he divided his real estate into two parts, and he devised one of these parts to his son Henry and the other to his son Michael. The sons entered into possession, and the widow Anna Charles lived with the son Henry. Subsequently the will was set aside upon an issue of *devisavit vel non*. Henry Charles then took out letters of administration upon the estate of his father, and under proceedings in partition, the real estate of the decedent was divided into two purparts, of which No. 1 was awarded to Susan Huber at $11,585.35, and No. 2 to Anna Warfel at $10,860.75.

Anna Charles, the widow, was the daughter of Michael Kreider, from whose estate, in 1852, she received in personalty $1676.01½, and from the sale of his realty $1638.68¾, or together $3314.70. Her husband united with her in releases to the administrators of Kreider, which recited "Henry Charles, the husband of Anna Charles, being present at the execution of the release, signs and seals the same as evidence of his full consent of the money therein mentioned having been paid to his wife, Anna Charles, and in consideration of the premises fully sanctioning her act and deed, and releasing to the said administrators of said deceased, their heirs and assigns, any claim or interest which he might or could have in the premises."

November 10th, 1875. The widow and children of Henry Charles entered into a sealed agreement of settlement, which provided:

" 1st. The said widow is to be charged with the sum of two hundred and seventeen dollars and fifty cents ($217.50), and is to keep all of the household and kitchen furniture, which said Henry Charles died possessed of, and also the stock appraised to her for $300 claim.

" 2d. Said administrator to be charged with the proceeds of about twelve acres out in corn at time of death of Henry Charles. Also with proceeds of wheat put out in purpart No. 1 of real estate in 1873, as well as of crops put out on same in 1874. Also with proceeds of corn crop put out in

1874 on No. 2 (farmed by Michael Charles). Also with the proceeds of wheat crop put out in both farms in 1874. Also the oats crop on both farms in 1875.

"The crops of corn on both farms for 1875 and hay and straw produce of 1875 to belong to the respective acceptors of the real estate. Commissions of five per cent. to be allowed on all personal property charged against administrator, deducting such commissions as have been already claimed in administrators' account filed on said estate. The counsel fees allowed by Court for services relative to real estate, $150, and fees and costs of sheriff's clerk, survey, etc., relative to same, $94.62, are to be paid by administrator out of the personal property. The advancements against the children are to be taken and accounted for at the amounts stated in the first inventory filed.

" The real estate purpart No. 1, accepted by Mrs. Huber, is to be conveyed at the acceptance price, $11,585.31 (the one-third thereof to remain charged during life of widow), to Henry Charles.

"And purpart No. 2, accepted by Mrs. Anna Warfel, is to be charged at the acceptance price of $10,800.75 (the one-third thereof to remain charged during the life of the widow) to Michael Charles. They, the said Henry Charles and Michael Charles, are to pay out the shares of the heirs of said Henry Charles in the two-thirds of the acceptance prices for said two purparts, including shares of Susan Huber and Anna Warfel, on the 1st of April next, A. D. 1876, with interest from the 11th of September, A. D. 1875, except, should it be deemed necessary by attorneys for estate to retain a share for John Charles (believed to be long since dead), such sum as Court may direct, and, as directed, is to be kept back until the matter be legally determined.

" Purpart No. 3 of real estate, accepted by Mrs. Huber at $80, is to be retained by her, but the widow and heirs of Henry Charles are to receive nothing of the acceptance-money as a dower of $85, with interest from April 1st, 1875, is due heirs of Henry Eshleman, of Martic Township, his widow, Mary Eshleman, having died.

" The separate estate of widow Anna Charles, received from her father Michael Kreider's estate, and which came to the hands of her husband in the year 1852, viz., personal $1676.01½, real $1638.68¾ = $3314.70 (see releases in record-book Z, vol. vii., pages 354 and 355) is to be drawn out by her from estate of Henry Charles, and retained by her sons Henry and Michael Charles, who are to pay to her the annual interest, and, in case of sickness or other need, apply so much of the principal for her use as they deem right and just, and

at her death, the remainder of said fund to be paid to her heirs.

" It is agreed also, for the purpose of paying Michael for barn erected on purpart No. 2 of real estate, since death of his father, that he shall receive from the widow his mother $600, and from Benjamin, Henry, Elizabeth, Jacob, Barbara, Fanny and Catharine, his brothers and sisters, each $200, which amounts are to be credited now against their respective shares in the two-thirds of acceptance-moneys for purpart No. 2 of real estate, to be conveyed to said Michael Charles as hereinbefore mentioned."

This agreement was acknowledged and recorded. Anna Charles the widow died in October, 1876, leaving a last will and testament, in which she bequeathed as follows :

" It is my will, and I do hereby give and bequeath unto my son Henry Charles and my daughter Fanny Charles all my household goods and furniture, as well as my own separate estate, to wit : The sum of fourteen hundred and thirty-nine dollars and eighty-five cents ($1439.85) held by my son Henry Charles, and the sum of ten hundred and fifty-seven dollars and thirty-five cents ($1057.35) held by my son Michael Charles, the said household goods and moneys are to be divided equally between them, and are to be their separate estates absolutely."

The petition asked for an account as to the sum of $3314.70.

The answer set up the disposition of the separate estate of Anna Charles under her will.

The Court below, LIVINGSTON, J., January 14th, 1882, decreed as follows :

" A full and careful examination of the record, the petition, answers, and replication has satisfied us of the propriety and wisdom of this family settlement and arrangement, and that the rule now before us should be made absolute, and that a citation should issue as prayed for, so as to require an account to be filed. Let the citation issue. Rule made absolute."

Henry Charles and Michael Charles then appealed, assigning that the Court erred in making the rule absolute, in issuing a citation, and in ordering an account.

*George Nauman* and *Philip D. Baker*, for the appellants.

No trust was created by the agreement of November 10th, 1875. The fund was admitted to belong to Anna Charles. The source from which it came and the manner were pointed out. The payment of the interest to her annually during life, and the remainder to her heirs made it hers absolutely :

Williams *v.* Leech, 4 Casey, 89 ; Doebler's Appeal, 14 P. F. S., 9 ; Steiner *v.* Kolb, 7 P. F. S., 123 ; Kepple's Appeal, 3 P. F. S., 211 ; Biddle's Appeal, 19 P. F. S., 194; Cox *v.* Rogers, 27 P. F. S., 165 ; Potts's Appeal, 6 Casey, 170 ; Smith's Appeal, 11 Harris, 9 ; Nunez *v.* Fisher, 15 S. & R., 149 ; Ralston *v.* Waln, 8 Wr., 279 ; Physick's Appeal, 14 Wr., 128 ; Nice's Appeal, 14 Wr., 143 ; Bush's Appeal, 9 Casey, 85 ; Pratt *v.* McCawley, 8 Harris, 264 ; Kay *v.* Scates, 1 Wr., 31 ; Harvey's Appeal, 11 Casey, 207 ; Mackason's Appeal, 6 Wr., 330 ; Turner *v.* Scott, 1 P. F. S., 126 ; Frederick's Appeal, 2 P. F. S., 338.

It cannot be implied that the word "heirs" meant "children:" Doebler's Appeal, 14 P. F. S., 13.

She disposed of the fund in a will, under which the petitioners take nothing.

*N. Ellmaker* and *H. M. North*, for the appellees.

The agreement was a family settlement, in which the word "heirs" is used as descriptive of the persons signing it, the children of Anna Charles. The fund was placed in the hands of trustees. If this was the intention, there is no rule of law to prevent its being carried out : Doebler's Appeal, 14 P. F. S., 9.

In this settlement disputes were compromised, and concessions made, and if the appellees cannot share in this fund, they gave up everything, and got nothing. Such settlements will be enforced upon principles which are not applied to agreements generally: Lies *v.* Stub, 6 Watts, 48 ; Shartel's Appeal, 14 P. F. S., 25 ; Wistar's Appeal, 30 P. F. S., 484 ; Stockley *v.* Stockley, 1 Ves. & B., 31 ; Barton *v.* Wells, 5 Wharton, 226; Jourdan *v.* Jourdan, 9 S. & R., 276 ; Perkins *v.* Gay, 3 S. & R., 331 ; Huss *v.* Stephens, 1 P. F. S., 282 ; Cox *v.* Freedley, 9 Casey, 124 ; Dodson *v.* Ball, 10 P. F. S., 500.

When the intention requires it, the word "heirs" may be divested of its technical meaning : Chew's Appeal, 1 Wr., 23 ; Guthrie's Appeal, 1 Wr., 14.

The proceeding was interlocutory, and the appeal is premature: Eckfeldt's Appeal, 1 Harris, 171 ; Cooper *v.* Vanfleet, 2 W. N. C., 241.

OCTOBER 2D, 1882.—The opinion of the Court was delivered by GORDON, J. :

The Court below has given us no reason for treating Henry and Michael Charles as trustees of the children of Anna Charles, except that the paper executed by these parties on the 10th of November, 1875, was a family settlement, and

ought not to be disturbed. But *non constat* that the disposition by the will of Anna Charles of property in said paper recognized as her own absolute personal estate, will in any way disturb such settlement. On what principle the word "heirs," ordinarily a word of limitation, can be turned into the word "children," through which the appellees are to take as purchasers, or remainder men, we cannot understand. There is certainly nothing in the paper itself which even remotely indicates such an intention; on the other hand, everything therein recited leads to a contrary conclusion. The subject-matter of the alleged trust was some $3314, which the writing acknowledges to have come to the widow, Anna Charles from the estate of her father Michael Kreider. Without doubt, this money, at that time, belonged to her absolutely. But, why should it not continue so to belong to her? By this settlement with these children, she received nothing that was not already her own, or that she was not by law entitled to take; hence, there was no consideration on which to support the presumption of a gift in their favor, and that she authorized two of her sons to take charge of this money, as trustees to her own use during her life, neither altered her right to or power over it, nor vested title of any kind in the petitioners. It is, therefore, impossible for us to comprehend by what rule of construction the language of the instrument, now before us, can be so changed, we might say perverted, as to deprive the legatees of Mrs. Charles of that which was bequeathed to them by her will.

The decree of the Court below is now reversed and set aside at the costs of the appellees.

JANUARY TERM, 1882, No. 434.          MAY 18TH, 1882.